UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE, FOR THE BENEFIT OF THE HOLDERS OF COREVEST AMERICAN FINANCE 2022-P2 TRUST MORTGAGE PASS-THROUGH CERTIFICATES c/o SITUS HOLDINGS LLC 2 EMBARCADERO CENTER, 8th FLOOR, SAN FRANCISCO, CA 94111,<br><br>Plaintiff,<br><br>v.<br><br>BRICKS & TIMBER RESIDENTIAL LLC and B&T RESIDENTIAL PLEDGOR LLC,<br><br>Defendants. | Case No. **7:24-cv-06353-CS**<br><br>[~~PROPOSED~~] ORDER GRANTING RECEIVER'S CONSENT MOTION TO MARKET AND SELL RECEIVERSHIP ASSETS VIA A SERIES OF ONLINE AUCTIONS |

This lawsuit is before the Court on the Receiver's consent motion to market and sell receivership assets at "public sale" pursuant to 28 U.S.C. §§ 2001 and 2002 via a series of online auctions. With consent of the parties and upon consideration of the motion, the supporting declaration, and the statutory and case law, the Court **GRANTS** the motion as follows:

## PROCEDURAL BACKGROUND

1.      The Receiver seeks permission to market and sell the real property in the receivership estate (the "Receivership Estate"), which consists of 73 single family rental properties in Alabama, Georgia, Indiana, and Mississippi, free and clear of any and all liens, encumbrances, and claims, *via a series of online auctions*.

2.      On October 7, 2024, this Court entered an order appointing the Receiver, and among other things, authorized the Receiver to,

> execute contracts to sell the [p]roperties . . . on such terms as are acceptable and approved in writing prior to such sale by Plaintiff, by way of public or private sale . . . provided . . . that the Receiver shall not be permitted to conclude a sale . . .

without the Receiver's subsequent petition to the Court . . . and this Court's further order confirming such proposed sale.

(Dkt. 23 at 9).

3.      The Receiver posted his bond on October 15, 2024, and assumed his duties. The Receiver evaluated the condition of the properties and considered various approaches for disposing of the collateral in the Receivership Estate in a manner that maximizes the value received for such assets. Based on his familiarity with the properties in the Receivership Estate and his prior experiences with online auctions, the Receiver has recommended that an online auction is the strategy most likely to yield the best return for the Receivership Estate. The Receiver further advised the Court in the motion that the proposed marketing and sales procedures (1) are commercially reasonable, (2) will result in a fair and equitable recovery for the Receivership Estate, and (3) will promote judicial efficiency and streamline the approval process of the Receiver's sales by delineating, in advance of the auctions, the procedures that the Receiver and potential purchasers must comply with in order for the Court to approve each sale. The Receiver has proposed to engage Auction.com to conduct the auctions. "Auction.com is one of the nation's leading online real estate marketplaces, and [as of 2015] ha[d] sold more than $30 billion in residential and commercial assets since it was founded in 2007 [and] . . . . . ha[d] over 900 employees and [in] 8 offices throughout the United States." *Pennant Mgmt., Inc. v. First Farmers Fin., LLC*, No. 14-CV-7581, 2015 WL 5180678, at *3 (N.D. Ill. Sept. 4, 2015).

## ANALYSIS

Federal law authorizes the Receiver to sell real property in the Receivership Estate via "public sales":

> Any realty or interest therein sold under any order or decree of any court of the United States shall be sold as a whole or in separate parcels at public sale at the courthouse of the county, parish, or city in which the greater part of the property is

located, or upon the premises or some parcel thereof located therein, as the court directs. ***Such sale shall be upon such terms and conditions as the court directs.***

***Property in the possession of a receiver or receivers appointed by one or more district courts shall be sold at public sale in the district wherein any such receiver was first appointed,*** at the courthouse of the county, parish, or city situated therein in which the greater part of the property in such district is located, ***or on the premises or some parcel thereof located in such county, parish, or city, as such court directs,*** unless the court orders the sale of the property or one or more parcels thereof in one or more ancillary districts.

28 U.S.C. § 2001(a) (emphasis added). District Courts have routinely approved "public sales" conducted by online auctions. *See, e.g., Huntington Nat'l Bank v. Buccaroo LLC*, No. 22-11290, 2024 WL 2701614, at \*10 (E.D. Mich. May 24, 2024) (approving online marketing and sales procedures and finding that such procedures comply with and satisfy the sale and notice requirements in 28 U.S.C. § 2001(a)); *Sec. & Exch. Comm'n v. Faulkner*, No. 3:16-CV-1735-D, 2019 WL 3387760, at \*2 (N.D. Tex. July 26, 2019) (concluding that "the text of the statute, interpreted literally, allows for the sale of receivership assets" from broker/auctioneer's website).

Section § 2002 sets forth, in pertinent part, the requirement for advertising "public sales":

A public sale of realty or interest therein under any order, judgment or decree of any court of the United States shall not be made without notice published once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation in the county, state, or judicial district of the United States wherein the realty is situated.

If such realty is situated in more than one county, state, district or circuit, such notice shall be published in one or more of the counties, states, or districts wherein it is situated, as the court directs. The notice shall be substantially in such form and contain such description of the property by reference or otherwise as the court approves. The court may direct that the publication be made in other newspapers.

28 U.S.C. § 2002. District Courts have concluded that online advertising "substantially complies with § 2002." *Faulkner*, No. 3:16-CV-1735-D, 2019 WL 3387760, at \*2 (listing cases where courts approved of "notice procedures that deviated from the text of § 2002 in non-substantial ways").

3

The terms proposed by the Receiver are consistent with the procedures for online auctions and marketing that other District Courts have ruled "comply with and satisfy the sale and notice requirements set forth" in 28 U.S.C. § 2001(a). *Buccaroo LLC*, No. 22-11290, 2024 WL 2701614, at *10; *see also Faulkner*, No. 3:16-CV-1735-D, 2019 WL 3387760, at *2 (concluding publishing notice of the sale in an electronic newsletter, and the broker's and receiver's websites "substantially complie[d] with § 2002*"); United States v. One 2005 Lagoon 440 Sailing Catamaran Named Bohemian Rhapsody*, No. CV 13-9262-DMG (JCX), 2017 WL 10573808, at *3 (C.D. Cal. Sept. 22, 2017) (analyzing § 2001(a) requirements in context of a "public sale via an online auction" of personal property and observing that "the online auction would likely attract more potential buyers . . . because they will have the convenience of submitting their bids online rather than having to travel to a courthouse or to the location in which it happens to be stored").

Based upon the foregoing, this Court **FINDS** the procedures proposed by the Receiver (1) are commercially reasonable, (2) will result in a fair and equitable recovery for the Receivership Estate, and (3) will promote judicial efficiency and streamline the approval process of the Receiver's sales by delineating, in advance of the auctions, the procedures that the Receiver and potential purchasers must comply with in order for the Court to approve each sale. This Court **CONCLUDES** that the procedures for marketing and selling the properties as set forth in this Order, substantially comply with the statutory requirements for advertising and selling real property under 28 U.S.C. §§ 2001 and 2002.

Based on the foregoing, the Court **ORDERS** as follows:

1.    The Receiver is authorized to engage Auction.com to conduct the auctions.

2.    The Receiver is authorized, in his discretion, and subject to Plaintiff's prior written approval to set the sale terms and specify a "Contract Reserve Price" for each of the 73 properties,

whether sold individually or in bulk lots. The "Contract Reserve Price" is defined as the gross contract price determined by the Receiver and approved by Plaintiff in advance of the sale, and not the "Net Cash" received by the Seller (after expenses) listed on the settlement statement.

3.      The properties for auction shall be advertised on a rolling basis, and the auctions will begin in August 2025 and shall be completed by December 31, 2025.

4.      Auction.com shall advertise the auction through Auction.com's website for four weeks immediately preceding each auction and also may use direct target marketing with email redirecting interested parties to the online portal landing pages.

5.      Outreach marketing calls may also be made to prospective buyers and to prior single-family buyers and users of the auction platform.

6.      If a valid bid at an auction is equal to or greater than the "Contract Reserve Price," or is otherwise in price and terms acceptable to the Receiver in the Receiver's discretion and subject to Plaintiff's prior written approval, the highest bidder (auction purchaser) will enter into a Sale Procedures Agreement ("SPA").

7.      The terms and conditions of the auction require the successful bidder to purchase the property, and the SPA establishes the conditions, terms, and procedures for closing the transaction, subject to the Court's approval.

8.      When each SPA is signed, the Receiver shall, within 5 business days of the auction, request, through a brief motion, that the Court approve the proposed sale and issue an order authorizing the Receiver to transfer the Property at closing to the winning bidder via Receiver's deed as described in the SPA.

9.      Auctions that do not result in an approved buyer purchasing the property for an amount equal to or greater than the "Contract Reserve Price" will be suspended and then re-

advertised, and the property or properties will be marketed for sale at another auction on a later date.

10.     The Receiver shall continue to make reports in accordance with the Court's October 7, 2024 order appointing the receiver. (Dkt. 23.).

11.     The Receiver and the parties shall notify the Court by November 14, 2025, of the status of the sales and shall indicate whether the Receiver will need additional time beyond December 31, 2025, to complete the auctions.

12.     To the extent that the Federal Rules of Civil Procedure or Local Rules of this Court require the parties to prepare a preliminary planning report, complete initial disclosures, conduct discovery, amend pleadings, file dispositive motions, or otherwise impose procedural deadlines on the parties, such deadlines are **STAYED** until further order this Court.  The Court will evaluate whether to impose such deadlines after reviewing the parties' November 14, 2025 status report to the Court.

SO ORDERED, this 18th day of June 2025.

_____
UNITED STATES DISTRICT COURT JUDGE

CONSENTED TO:

_____
Chris Neilson
Managing Partner
Trigild, LLC
4131 North Central Expressway, Suite 775
Dallas, Texas 75204
858.242.1227
Chris.Neilson@trigild.com

*Receiver*

*/s/ Evan S. Nadel*
Evan S. Nadel
enadel@ktslaw.com
KILPATRICK TOWNSEND
  & STOCKTON LLP
3 Times Square, 28th Floor
New York, NY 10036
Telephone: (212) 775-8773
Facsimile: (212) 775-8800

*Attorney for Plaintiff*

*/s/ Jan Arthur Marcus*
Jan Arthur Marcus (AM9127)
Email: jmarcus@kwcllp.com
Andrea H. Marcus (AM1994)
Email: andrea.marcus@gmail.com
Patrick V. Delorio (2576767)
Email: pvd@deioriolawgroup.com
THE DEIORIO LAW GROUP PLLC
800 Westchester Avenue, Suite S-608
Rye Brook, NY 10573
Phone: (914) 696-5555
Fax: (914) 696-0450

*Attorneys for Defendants*
*Bricks & Timber Residential LLC*
*and B&T Residential Pledgor LLC*